# SAMUEL & STEIN

ATTORNEYS AT LAW

1441 BROADWAY, SUITE 6085, NEW YORK, NY 10018
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

**DAVID STEIN**
dstein@samuelandstein.com

ADMITTED IN
NY, NJ, PA, IL, DC

March 4, 2022

**VIA ECF**

Hon. Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    <u>Gonzalez v. BBKM Associates LLC d/b/a Mirage Diner, et al.</u>
              *Case Number 20-cv-40 (DLI) (TAM)*

Dear Magistrate Judge Merkl:

    We represent plaintiff Crescenciano Gonzalez in the above-captioned matter and submit this letter to the Court with the consent of defendant Bill Kontolios, who as the Court may recall is effectively pro se in this case, to report to the Court that the parties have reached an agreement to settle this matter, and so that the Court may assess and approve the settlement agreement. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated at arm's length.

<u>Background</u>

    Plaintiff filed his complaint in this matter on January 3, 2020. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for unpaid overtime pay, as well as claims solely under the New York Labor Law for failure to pay the minimum wage or spread of hours pay, and the provide wage notices and failure to provide wage statements.

    Specifically, Mr. Gonzalez alleged that he was employed by defendants as a dishwasher at their diner from June 2018 through October 2019. He alleged that he worked roughly 54 hours per week, but that he was not paid overtime. Instead, defendants paid him at a weekly salary of $500, which did not include an overtime component or vary based on the number of hours he had worked in a week. Plaintiff was originally paid in cash with no paystubs, but after another employee sued defendants, defendants began paying him by a combination of cash and check. When he began receiving part of his pay by check, the check and paystub reflected only pay for 20 hours of work — and at a fictitious hourly rate —, rather than accurately reflecting his entire

work schedule and compensation. Moreover, his hours and compensation left his effective pay rate below the New York State minimum wage. Finally, Mr. Gonzalez did not receive the wage notice required by the Wage Theft Prevention Act when he was hired or at any other time.

Based on these facts, Mr. Gonzalez calculated his estimated damages as follows, if he prevailed at trial on *all* of his claims: $42,000 in actual and liquidated overtime damages under the FLSA and NYLL, $10,000 in actual and liquidated minimum wage damages under the NYLL, $2,000 in actual and liquidated spread of hours damages under the NYLL, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or accurate paystubs. In other words, Mr. Gonzalez would have been owed $64,000.

## Settlement Agreement

As can be seen from the Settlement Agreement submitted herewith, the parties agreed to settle plaintiff's claims against defendants for a total of $35,000. While the final settlement amount is less than plaintiff's maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants generally denied plaintiff's allegations about his work schedule, and produced payroll records that purported to show Mr. Gonzalez working and being paid for 20 hours of work weekly. While these were not time records, and we believe that Mr. Gonzalez's testimony about their inaccuracy was credible, they did represent an obstacle for plaintiff to overcome. Mr. Gonzalez did not have any records of his own, and his original calculation was based solely on his own recollections about his work history. To be sure, under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), in the absence of time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. But that represents a trial issue rather than a summary judgment issue, and therefore would delay resolution of the case. Much more importantly, plaintiff had significant concerns about collectability. As an indicator of the problem, defendants' first lawyer had withdrawn due to nonpayment, and our research did not reveal assets that could have been used to satisfy a larger judgment.

By agreeing to settle at this juncture, plaintiff was able to gain a reasonable percentage of the damages he was potentially owed, without the delay of waiting for trial or the risks attendant with trial. Moreover, plaintiff will be receiving his payment in a lump sum. Thus, plaintiff decided to accept defendants' offer.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In

addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total settlement amount is 55% of plaintiff's maximum possible recovery (83% of his maximum possible FLSA recovery). And even after attorneys' fees, plaintiff will be receiving complete recovery of his claimed actual FLSA damages. He will receive these funds without running any risk or having to prove his claims.

Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016)(net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable). And he will be receiving this money in a lump sum.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-

length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and in consultation with plaintiff they thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks. (Defendants were represented for a portion of this case, though ultimately the settlement was negotiated without the involvement of counsel on their end. Still, the fact that they had previously been represented suggests that this was not a quick buyoff of plaintiff by defendants.)

Finally, other factors present do not weigh against a settlement. Plaintiff no longer works for defendants, so there is no risk he will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement, and no other employees have come forward to join during the pendency of the case. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $623.00 (filing fee, service of process, and interpretation)[1] and will retain 1/3 of the net settlement (i.e., an additional $11,459.00) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted).

Moreover, it represents an attorneys' fee amount of approximately 92% of our lodestar, a multiplier well within the range of those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

---

[1] The Court can take judicial notice of the filing fee; receipts for service of process and interpretation are attached as Exhibit C.

  While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[2] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 20.70 | $8,060.00 |
| David Nieporent | Senior Associate | $325 | 13.70 | $4,452.50 |
| **TOTAL** | | | **34.40** | **$12,512.50** |

A copy of our time records, maintained contemporaneously, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

  These rates are well within the norm of billing rates for cases of this nature in this district. *See Mendez v. Casa Blanca Flowers, Ltd.*, 2014 WL 4258943, at *6 (E.D.N.Y. July 8, 2014), *report and recommendation adopted*, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff.") (collecting cases); *Tacuri v. Nithin Constr. Co.*, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $200 to $325 for senior associates).

  Moreover, plaintiff's counsel has been awarded fees in this range in cases in this district and slightly higher rates in the Southern District. For example, Judge D'Arcy Hall recently awarded us those rates. *Lopez et al. v. Ki Moon Restaurant Inc., et al.*, 2021 WL 681710, at *3 (E.D.N.Y. Jan. 28, 2021), *report and recommendation adopted by* 2021 WL 681382 (E.D.N.Y. Feb. 22, 2021), as did Judge Brodie in *Pena v. Super Economic One Way Supermarket Corp., et al.*, 2021 WL 4755603, at *3 (E.D.N.Y. Sept. 8, 2021), *report and recommendation adopted by* 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021). And in the past we have been awarded fees of $375 and $325 in wage and hour cases in this district. *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (E.D.N.Y. May 24, 2018); *Vega v. K & C Interior Construction Corp., et*

---

[2] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125. Travel time was billed, as per firm policy, at half the attorney's regular rate.

*al.*, 2018 WL 4376486 (E.D.N.Y. Aug. 28, 2018), *report and recommendation adopted by* 2018 WL 4374911 (E.D.N.Y. Sept. 13, 2018).

And in the Southern District, for example, we were recently awarded fees of $425 and $325, respectively, by Judge Nathan in *Vasquez et al. v. NS Luxury Limousine Service Ltd. et al.*, 2022 WL 377378 (S.D.N.Y. Feb 8, 2022), and by Magistrate Judge Netburn in *Solano v. Andiamo Café Corp.*, 2021 WL 2201372 (S.D.N.Y. June 1, 2021), and in the default judgment context Judge Seibel recently approved fees of $425 and $325 for myself and David Nieporent, respectively, in *Medina Baca et al. v. NB General Construction Corp., et a*l., 20-cv-4701 (CS) [Docket Entry 18](December 10, 2020). We have also been awarded fees of $400 and $325, respectively, by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016); by Judge Briccetti in *Lu v. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018); by Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 2018 WL 8996336 (S.D.N.Y., September 28, 2018); by Judge Oetken in *Zhu v. Salaam Bombay, Inc., et al.*, 2019 WL 76706 (January 2, 2019), and by Judge Daniels in *Martinez et al. v. 2009 Bamkp Corp. et al.*, 2019 WL 7708607 (S.D.N.Y. December 10, 2019), *report and recommendation adopted by* 2020 WL 409691 (S.D.N.Y. January 23, 2020).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Respectfully submitted,

David Stein

Enc.

cc: Bill Kontolios (via email)